UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SHASTA RESOURCES COUNCIL, a
California public benefit
corporation; SHASTA COALITION FOR
PRESERVATION OF PUBLIC LAND, a
California unincorporated
association; SACRAMENTO RIVER
PRESERVATION TRUST, a California
public benefit corporation,

        Plaintiffs,

   v.

UNITED STATES DEPARTMENT OF THE
INTERIOR; KENNETH LEE SALAZAR, in
his official capacity as
Secretary of the Department of
the Interior; INTERIOR BOARD OF
LAND APPEALS; BUREAU OF LAND
MANAGEMENT; JIM CASWELL, in his
official capacity as Director of
the Bureau of Land Management;
MIKE POOL, in his official
capacity as State Director of the
Bureau of Land Management; STEVEN
W. ANDERSON, in his official
capacity as Field Manager of the
Redding Field Office of the
Bureau of Land Management; BRENT
OWEN; and KIMBERLY D. HAWKINS,

        Defendants.
_____/

NO. CIV. 08-645 WBS CMK

ORDER RE: REQUEST TO
RECOVER COSTS

----oo0oo----

1

Plaintiffs Shasta Resources Council, Shasta Coalition for Preservation of Public Land, and Sacramento River Preservation Trust brought this action against defendants United States Department of the Interior, Interior Secretary Kenneth Lee Salazar, the Interior Board of Land Appeals ("IBLA"), the Bureau of Land Management ("BLM"), BLM Director Jim Caswell, BLM State Director Mike Pool, BLM Redding Field Office Manager Steven W. Anderson (collectively, "Federal Defendants"), Brent Owen, and Kimberly D. Hawkins (together, "Private Defendants"), alleging violations of the National Environmental Policy Act ("NEPA"), 43 U.S.C. §§ 4331-4347, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1785. Plaintiffs' allegations pertained to a 2006 land exchange between BLM and Private Defendants involving a 216 acre parcel of federal land in Shasta County, California ("Federal Parcel"), and a 566 acre parcel of private land in Trinity County, California ("Non-Federal Parcel"). In an Order dated April 7, 2009, the court denied plaintiffs' motion for summary judgment and granted defendants' cross-motions for summary judgment. Federal Defendants now request to recover costs in the amount of $4141.07 pursuant to Federal Rule of Civil Procedure 54(d)(1), and plaintiffs object to this request.

Federal Rule of Civil Procedure 54(d)(1) instructs that "costs--other than attorney's fees--should be allowed to the prevailing party" unless a federal statute, Federal Rule of Civil Procedure, or a court order provides otherwise. The type of costs that may be awarded pursuant to Rule 54(d)(1) are limited to those enumerated in 28 U.S.C. § 1920. <u>Alflex Corp. v.</u>

Underwriters Labs., Inc., 914 F.2d 175, 176 (9th Cir. 1990) (citing Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987)). Here, the costs requested by Federal Defendants are for "exemplification and copies" of the administrative record, which is expressly permitted under 28 U.S.C. § 1920(4).

"Rule 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, requiring the losing party to show why costs should not be awarded." State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 723 (9th Cir. 2005) (citing Save Our Valley v. Sound Transit, 335 F.3d 932, 944-45 (9th Cir. 2003)). "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award. The presumption itself provides all the reason a court needs for awarding costs." Save Our Valley, 335 F.3d at 945. Only in the "rare occasion" where "severe injustice will result from an award of costs," such as "the injustice that would result from an indigent plaintiff's being forced to pay tens of thousands of dollars of her alleged oppressor's legal costs," does a district court "abuse[] its discretion by failing to conclude that the presumption has been rebutted." Id.

In their objections to Federal Defendants' request to recover costs, plaintiffs rely on a concurring opinion in a 1974 decision from the D.C. Circuit for the proposition that "the taxation of costs works as a penalty, which should not be imposed unless the loser can fairly be expected to have known at the

3

outset that his position lacked substance." Rural Hous. Alliance v. U.S. Dep't of Agric., 511 F.2d 1347, 1349 (D.C. Cir. 1974) (Bazelon, C.J., concurring). Not only is this source of dubious authority in this court--particularly in light of the aforementioned caselaw from the Ninth Circuit--its analysis does not withstand scrutiny.

The concurrence from Rural Housing Alliance attempted to summarize the approach taken by the Seventh Circuit in Chicago Sugar Co. v. American Sugar Refining Co., but that case expressly stated that "the denial of costs to the prevailing party . . . is in the nature of a penalty for some defection on his part in the course of the litigation." 176 F.2d 1, 11 (7th Cir. 1949) (emphasis added). The Chicago Sugar court then mentioned in dicta that "where it is clear that the action was brought in good faith, involving issues as to which the law is in doubt, the court may in its discretion require each party to bear its own costs." 176 F.2d at 11 (emphasis added). This line of caselaw thus does not support plaintiffs' position; plaintiffs' assertions that they brought this action "in good faith" and "diligently and fairly pursued their claims" (Pls.' Objections 2:17-20), while commendable, are attributes of an "ordinary" case for purposes of Rule 54(d)(1). Mexican-Am. Educators, 231 F.3d at 593.

Plaintiffs' remaining arguments against awarding costs involve the public benefits that redound from NEPA lawsuits and the fact that plaintiffs "are volunteer-run, non-profit organizations" that are "by no means affluent," while Federal Defendants "are by no stretch of the imagination 'needy.'"

(Pls.' Objections 2:17-27, 3:4-5, 3:23-24.)  First, although NEPA establishes an auspicious national policy of "create[ing] and maintain[ing] conditions under which man and nature can exist in productive harmony," 42 U.S.C. § 4331(a), NEPA plaintiffs are not immune from awards of costs to prevailing parties.  See, e.g., Tahoe Tavern Prop. Owners Ass'n v. U.S. Forest Serv., No. 06-407, 2007 WL 1725494, at *2 (E.D. Cal. June 14, 2007) (Karlton, J.) (awarding $3001.73 in copying costs to the prevailing defendants in a NEPA lawsuit); Marbled Murrelet v. Babbitt, No. 95-3261, 1999 WL 193387, at *5 (N.D. Cal. Apr. 5, 1999) (awarding $8102.78 in copying costs to the prevailing defendants in a NEPA lawsuit). Paying the cost of copying the administrative record in this case is not such an inequitable burden as to discourage future lawsuits under NEPA in pursuit of the public interest.  See generally, e.g., Save Our Valley, 335 F.3d at 946 (affirming an award of costs to the prevailing defendants where "[t]he district court might have believed that this relatively small sum--$5,310.55--would not 'chill' future civil rights litigation . . . .").

Plaintiffs' assertion that the Federal Defendants "are by no stretch of the imagination 'needy'" appears to suggest that, because defendants are officers and agencies of the federal government, Rule 54's presumption in their favor is somehow weakened.  This suggestion is without merit.  See, e.g., Fla. Keys Citizens Coalition, Inc. v. U.S. Army Corps of Eng'rs, 386 F. Supp. 2d 1266, 1268 (S.D. Fla. 2005) ("It is undisputed that the United States is a prevailing party in this action, and as such, the United States is entitled to an award of costs."); see

also Gilchrist v. Bolger, 733 F.2d 1551 (11th Cir. 1984) (holding that the district court abused its discretion in denying costs to prevailing party, the Postmaster General, in an employment discrimination case without articulating a reason for overcoming the presumption that a prevailing party is entitled to costs); Baez v. U.S. Dep't of Justice, 684 F.2d 999, 1005-07 (D.C. Cir. 1982) (en banc) (per curiam) (reversing the district court for erroneously holding that the United States was per se not entitled to costs under Rule 54(d)(1)); Sun Ship, Inc. v. Lehman, 655 F.2d 1311, 1317-18 (D.C. Cir. 1981) (holding that the district court abused its discretion by denying costs to the Secretary of the Navy as the prevailing party without stating a reason).

Furthermore, while plaintiffs may have "very limited funds available" and these copying costs may "put a severe strain" on these organizations (Pls.' Objections 3:5-6, 3:25), it has long been accepted that the taxation of costs is the "fair price of unsuccessful litigation," Baez, 684 F.2d at 1003, and "a normal incident of defeat," id. at 1004 (quoting Delta Air Lines, Inc. v. August, 450 U.S. 346, 352 (1981)). The court also cannot ignore plaintiffs' motion for summary judgment in this case, which contended that "in June 2006, Shasta Resources Council again submitted to BLM a 'fully funded' offer to purchase the Federal [P]arcel," but BLM "never seriously considered" the offer (Pls.' Mem. Supp. Summ. J. (Docket No. 28) at 14:7-11); the appraised value of the Federal Parcel at the time was $900,000 (Admin. R. 4332-33).

Accordingly, after reviewing plaintiffs' objections and

their supporting declarations, the court cannot conclude that plaintiffs' plight is analogous to "the injustice that would result from an indigent plaintiff's being forced to pay tens of thousands of dollars of her alleged oppressor's legal costs." Save Our Valley, 335 F.3d at 945; cf. Antoine v. County of Sacramento, No. 06-1349, slip op. at 3-4 (E.D. Cal. May 6, 2009) (denying an award of costs in the amount of $16,002.02 to prevailing defendants in a civil rights lawsuit where the plaintiff was unemployed and homeless and the award of costs could render him indigent).

      Finally, plaintiffs argue that even if the court were to grant Federal Defendants' request to recover costs, it should exclude "labor costs" associated with copying the administrative record, such as "Document and Blowback Reassembly"[1] and "Coding Database Set-Up." (Pls.' Objections 4:17-5:10.) In support of this objection, plaintiffs cite Tahoe Tavern, 2007 WL 1725494, at *1-2, in which the court denied the recovery of approximately $7000 in "paralegal fees for preparation and indexing of the administrative record."

      Although Tahoe Tavern did not provide additional detail as to the activities constituting "preparation and indexing of the administrative record," it evidently considered these costs to be separate from "costs associated with the copying of the administrative record," which it granted to the prevailing party.

---

[1] "Blowback" refers to the practice of printing electronic documents to paper. See SMS Demag AG v. Xtek, Inc., No. 06-60, 2007 WL 1852503, at *7 (E.D. Ark. June 26, 2007); Waste Servs. v. Waste Mgmt. Inc., No. 05-320, 2007 WL 1174116, at *2 n.4 (M.D. Fla. Apr. 18, 2007).

Id. at *1. The "costs associated with the copying of the administrative record," moreover, appear to have included not only materials, but also labor costs. See id. at *2 (granting costs for "Scanning/OCR" and "Bates Labeling"). In addition, the statute enumerating taxable costs does not expressly limit copying costs to materials alone. See 28 U.S.C. § 1920(4) (defining taxable costs to include "costs of making copies" (emphasis added)); see also 21A Federal Procedure, Lawyers Edition § 51:101 (2008) (providing that the taxable costs provided in 28 U.S.C. § 1920(4) have been "extended to include a prevailing party's costs of electronic scanning and imaging").

Ultimately, given the voluminous and fairly complicated administrative record in this case, the copying costs described in Federal Defendants' Bill of Costs do not appear unreasonable, and plaintiffs do not suggest that any costs were unnecessarily incurred. Accordingly, costs of **$4141.07** will be allowed.

IT IS SO ORDERED.

DATED: May 11, 2009

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE